IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CR-00106-BO-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **MOTION FOR PRELIMINARY** |
| v. | : | **ORDER OF FORFEITURE** |
| | : | |
| CHRISTOPHER HAMMOND | : | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, respectfully requests that the Court enter, pursuant to Fed. R. Crim. P. 32.2, the proposed Preliminary Order of Forfeiture filed herewith.

In support of this motion, the government shows unto the Court the following:

1. On February 7, 2023, the defendant was charged in a Superseding Criminal Indictment with offenses in violation of 18 U.S.C. §§ 641, 1341, 1343, 1956(a)(1)(B)(i), 1957, and 2314. The Indictment provided notice to the defendant that pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a), the United States would seek to forfeit any property with the requisite nexus to the offenses charged as set forth more particularly in the Forfeiture Notice. The government also provided notice that, in the event such property cannot be located, it would seek to recover substitute assets pursuant to 21 U.S.C. § 853(p).

2. On October 26 and November 2, 2023, the defendant entered a plea of guilty without the benefit of a written plea agreement as to Counts One through Four,

1

Six and Seven of the Superseding Criminal Indictment, specifically 18 U.S.C. §§ 641, 1341, 1343, 1956(a)(1)(B)(i), and 2314. On November 8, 2023, the defendant was found guilty by a jury verdict as to Count Five of the Superseding Criminal Indictment, specifically 18 U.S.C. § 1957.

3. Criminal forfeiture is a mandatory element of a defendant's sentence in cases where Congress has legislated forfeiture authority. *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014). Federal Rule of Criminal Procedure 32.2(b)(1)(A) provides that as soon as practicable after an adjudication of guilt, "the court must determine what property is subject to forfeiture under the applicable statute" by ascertaining whether "the requisite nexus" or connection between the property and the offense exists or, if directly forfeitable property is unavailable, the equivalent "amount of money" that the defendant will be ordered to satisfy through the forfeiture of substitute assets. The government's burden of proof as to the issue of forfeiture is by a preponderance of the evidence. *United States v. Tanner*, 61 F.3d 231, 234 (4th Cir. 1995). The Court may make its forfeiture determination based on "evidence already in the record, including any written plea agreement, and on any additional evidence submitted by the parties and accepted by the court as relevant and reliable," including in reliance on hearsay and circumstantial evidence. Fed. R. Crim. P. 32.2(b)(1)(B); *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005). Once a court determines that forfeiture is appropriate, the court "must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of

specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A).

4. Pursuant to 18 U.S.C. § 981(a)(1)(C), a defendant convicted of any offense constituting "specified unlawful activity" as defined by 18 U.S.C. §§ 1956(c)(7) and 1961(1), including, *inter alia*, violations of 18 U.S.C. §§ 641, 1341, 1343 and 2314, shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. This civil forfeiture authority is made applicable to criminal proceedings by virtue of 28 U.S.C. § 2461(c).

5. Property is forfeitable as "proceeds" if it satisfies the "but for" test; that is, if the defendant "'would not have [obtained or retained the property] *but for* the criminal offense.'" *United States v. Farkas*, 474 F. App'x 349, 360 (4th Cir. 2012) (summarizing and quoting caselaw); 18 U.S.C. § 1956(c)(9) (defining proceeds as "property derived from or obtained or retained … through some form of unlawful activity"). The proper measure is the total gross receipts (not the net gain or profit realized) of any offense involving the illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes. 18 U.S.C. § 981(a)(2)(A). Strict tracing is not required insofar as the government need not link property to a particular illegal transaction but may trace proceeds to the charged course of conduct generally. *See United States v. Hailey*, 887 F. Supp. 2d 649, 653 (D. Md. 2012). Additionally, "the law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture," but rather allows courts to "'use general points of reference as a starting point' for a forfeiture calculation and 'make reasonable

3

extrapolations' supported by a preponderance of the evidence." *United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011) (citation omitted).

6. Pursuant to 18 U.S.C. § 982(a)(1), a defendant convicted of a money laundering offense, including, *inter alia*, violations of 18 U.S.C. §§ 1956 and 1957, shall forfeit any property, real or personal, involved in the offense, or any property traceable to such property.

7. Property "involved in" a money laundering transaction includes "the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997). The subject matter or "corpus" of a laundering offense includes not only the SUA proceeds being laundered but also any untainted funds that comprise part of the same transaction. *United States v. Huber*, 404 F.3d 1047, 1061 n.11 (8th Cir. 2005). The subject matter or corpus of the offense likewise includes anything purchased, sold or exchanged for the laundered funds, even if legitimate funds have also been invested in the property. *See United States v. Hawkey*, 148 F.3d 920, 928 (8th Cir. 1998); *United States v. Miller*, 911 F.3d 229, 232 (4th Cir. 2018). Finally, property used to facilitate a laundering offense includes legitimate funds that have been commingled with SUA proceeds for purposes of disguising the nature and source of the proceeds, businesses used as a front for money laundering, and any other property that makes the laundering offense easier to commit or harder to detect. *See Tencer*, 107 F.3d at 1134-35 (commingled funds in

4

bank account); *United States v. Seher*, 562 F.3d 1344, 1369-70 (11th Cir. 2009) (inventory of jewelry business offered for sale to launder drug proceeds).

8. In this case, the preponderance of the evidence supports a conclusion that the defendant personally obtained at least $2,287,263.79 in gross proceeds from the offense(s) of conviction, and/or that the value of the property involved in the money laundering offense(s) for which the defendant was convicted was at least $2,287,263.79. The total value of the government property requisitioned by the defendant through the DLA RTD Program during the offense period was approximately $11 million. (*See* PSR [DE-170], ¶ 20). This property was identified as various weapon parts such as upper/lower receivers, gun barrels, gun bolts, firing pins, magazines, fixed sights, scopes, gun cases, holsters, and other gun parts; electric guitars; bayonets, swords, and scabbards; various tools; welding equipment; gym equipment; night vision goggles; and all-terrain vehicles. (*Id.*). As the government will show at sentencing, there is no evidence that all of this property was either added to his unit's property book or turned back in, and thus that at least $7 million in property was misappropriated. (*Id.* ¶ 28). Furthermore, his financial accounts demonstrated no purchase of inventory, much less inventory sufficient to generate such proceeds and property valued at only around $500,000 was recovered from the defendant's home (*id.* ¶ 25 n.2), giving rise to a preponderance of evidence that the vast majority of stolen items were sold by the defendant. The evidence shows that the defendant sold stolen property to three bulk buyers who paid him primarily by wire transfer, while also selling items directly on various retail websites and accepted

5

payment via peer-to-peer payment services like Paypal. (*Id.* ¶¶ 22-23). During the same period of time that the defendant was dealing in stolen government property, he opened up at least three bank accounts the admitted purpose of which was to conceal the proceeds from those sales. In all, the proceeds from his sales total $2,287,263.79:

    a. Defendant opened USAA account 4351 on December 22, 2020. Between January 2021 and January 2022, the account received 113 wire transfers totaling $1,901,032.00. The wires originate with individuals and include notations such as "tactical gear;" "various tactical collectibles;" "15 spatial lasers;" and "nine uppers and eighteen barrels;" consistent with the descriptions of the types of items that the defendant had misappropriated. In addition, there were $103,911.11 in deposits from Paypal, Apple Cash, Venmo, and deposits of cash and money orders, which is likewise consistent for how the defendant would be paid for items sold directly to the public on retail websites. (*See id.* ¶ 22-23; Exh. A, Hart Decl. ¶ 6).

    b. Defendant opened USAA account 2406 on February 15, 2021. In February 2021, the account received $2,275.00 in deposits from Paypal and money orders. (*Id.* ¶ 7).

    c. Defendant opened Schwab account 1644 on February 3, 2022. Between February and March 2022, the account received wire transfers totaling $136,820.00. (*Id.* ¶ 8).

6

d. In addition, between January 2021 and January 2022, deposits into Defendant's primary personal checking account (USAA account 4325) $143,225.68 in payments from Paypal, Apple Cash, deposits of cash and money orders unrelated to his military pay or tax refunds. Moreover, most of the proceeds initially deposited in the other USAA accounts was cycled through USAA account 4325 before being transferred into and through other financial accounts. (*Id.* ¶ 10).

9. Based on the foregoing, and in keeping with the principle that "the law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture," *Roberts*, 660 F.3d at 166, the evidence supports the conclusion that the defendant personally received at least $2,287,263.79 in proceeds from the offense in the form of payments into accounts under his control in exchange for the sale of stolen goods. But even if the defendant were able to establish that not all of these deposits were proceeds derived from the sale of stolen property, it is nevertheless an established fact from his guilty plea to Count Four of the Superseding Criminal Indictment that USAA and Schwab accounts were used as a platform to launder criminally derived proceeds into and through other accounts. It is also a well-established principle of law that all property "involved in" a money laundering offense is subject to forfeiture, including any clean funds which may be commingled with criminal proceeds, since the comingling of clean funds or legitimate transactions helps to conceal and disguise the illicit funds. *Tencer*, 107 F.3d at 1134-35. Therefore, under binding Fourth Circuit precedent, the Court is required to enter a forfeiture

7

judgment against the defendant in the full amount of the proceeds he obtained from the offense and/or the value of the funds he subsequently laundered—that is, **$2,287,263.79**—whether or not they remain in his possession at the time of sentencing. *United States v. Blackman*, 746 F.3d 137, 143-45 (4th Cir. 2014).

10. Once the total amount of the forfeiture is determined, the government may seek to satisfy it in one of two ways. The first is through the seizure and forfeiture of directly forfeitable or "nexus" property; that is, property which the government can trace back to crime and thus establish the requisite nexus to the offense of conviction pursuant to 18 U.S.C. § 981(a)(1)(C). In this regard, the government submits the Declaration of Michael Corey Hart which traces the original $2,287,263.79 in criminally derived proceeds into the various financial accounts and other assets listed below for which the government seeks a Preliminary Order of Forfeiture. Additionally, if the government establishes one or more of the statutory criteria set forth in 21 U.S.C. § 853(p) (i.e., that the defendant spent or otherwise dissipated the criminal proceeds and thus made them unavailable for forfeiture), a second option becomes available: the government may instead seek to forfeit "substitute property;" that is, "any other property of the defendant, up to the value of" the forfeiture money judgment. See 21 U.S.C. § 853(p); *United States v. Zorilla-Echevarria*, 723 F.3d 298, 300 (1st Cir. 2013) (noting that the government has the option to satisfy a forfeiture money judgment either with substitute property or nexus property); *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) ("Section 853(p) is not discretionary .... [W]hen the Government cannot reach the property

8

Case 5:22-cr-00106-BO Document 172 Filed 01/23/24 Page 8 of 15

initially subject to forfeiture, federal law requires a court to substitute assets for the unavailable tainted property.")

11. Here, the assets identified below as items c) through l) have been traced, in whole or in part, to criminally derived proceeds. (*See* Hart Decl. ¶¶ 10-22). To the extent that any of accounts may contain clean funds in proportion to the amount of traceable funds (e.g., items e, f, and k), the entire asset is nonetheless directly forfeitable because the comingling of funds constitutes their involvement in the money laundering offense. *Tencer*, 107 F.3d at 1134-35. Alternatively, those funds are still forfeitable as substitute property even if they are counted as clean, because the Government has exercised due diligence to trace the criminally derived property and cannot locate any other directly traceable assets beyond what have been identified in Exhibit A, which satisfies the requirements of 21 U.S.C. § 853(p) and permits the forfeiture of "any other property of the defendant, up to the value" of the amount reflected in the forfeiture money judgment.

12. Pursuant to Fed. R. Crim. P. 32.2(b)(2)(A), once the government has met its burden as to forfeitability, as it has done in this case, the Court "must enter the [preliminary order of forfeiture] without regard to any third party's interest in the property." Here, the government has gone to great pains to preempt any third-party claims by completing its tracing analysis in a manner so as not to trace any criminally derived proceeds into Heather Hammond's Schwab Roth IRA account (originally

identified for forfeiture in the Superseding Indictment),[1] and has also carved out $175,028.69 in assets originally traceable to Heather Hammond's personal funds which are not to be forfeited as part of item d) (Schwab Brokerage account number ending in 8367). Nonetheless, to the extent that Heather Hammond, Irene Walsh Hammond, and/or the defendant's minor children may intend to make claims to some of the forfeitable assets, the resolution of such issues is to be left to a forfeiture ancillary proceeding conducted pursuant to Fed. R. Crim. P. 32.2(c) and does not prevent the entry of the requested preliminary order of forfeiture. *See United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009) ("Rule 32.2 *requires* the issuance of a preliminary order of forfeiture when the proper nexus is shown, whether or not a third party claims an interest in the property") (emphasis in original); *United States v. Grayson Enter., Inc.*, 950 F.3d 386 (7th Cir. 2020) (possibility that defendant may not own property is not a reason to withhold a preliminary forfeiture order of property; issue of possible ownership by third party is to be determined in ancillary proceeding); *United States v. Weiss*, 791 F. Supp. 2d 1183, 1220 (M.D. Fla. 2011) (denying defendant's wife's motion challenging preliminary order of forfeiture because preliminary order is an adjudication of defendant's interest in property and entered without regard to any third party's interest in property; ancillary proceeding is the vehicle through which wife may proceed).

---

[1] Accordingly, the government is no longer seeking the forfeiture of this account.

13. Pursuant to the defendant's conviction of violations of 18 U.S.C. §§ 641, 1341, 1343, 1956, 1957, and 2314, and the entire record of the case, the government requests that the Court enter, as the statute requires, a Preliminary Order of Forfeiture imposing a forfeiture money judgment in the amount of the gross proceeds of the offense:

Forfeiture Money Judgment:

a) A sum of money in the amount of $2,287,263.79, representing the gross proceeds personally obtained by the defendant as a result of the offense(s) for which he/she has been convicted; and an amount for which the defendant shall be solely liable and in satisfaction of which the United States may forfeit substitute assets pursuant to 21 U.S.C. § 853(p);

14. Additionally, the government requests that the Court enter, as the statute requires, a Preliminary Order of Forfeiture regarding the following directly forfeitable and/or substitute property in which the defendant (or any combination of defendants in this case) has or had a forfeitable interest:

Personal Property:

b) $115,753.00 in U.S. Currency seized from Christopher Hammond on April 20, 2022 during the execution of a search warrant upon his residence at 61 Harvest Court, Linden, NC 28356;

c) Any and all assets held in Schwab Bank account number ending in 1644 in the name of Christopher Hammond and Heather Hammond, Joint Tenants;

d) Any and all assets held in Schwab Brokerage account number ending in 8367 in the name of Christopher Hammond and Heather Hammond, Joint Tenants, with the exception of $175,028.69 in assets to be left in the account;

e) Any and all assets held in Schwab Roth IRA account number ending in 4014 in the name of Christopher Hammond;

f) Any and all assets held in Robinhood account number ending in 2960 in the name of Christopher Hammond;

g) Any and all assets held in Treasury Direct minor-linked account number ending in 7073 in the name of F.B.H., which is linked to Treasury Direct account number ending in 7515 in the name of Christopher Hammond, including but not limited to the following:

| Confirmation Number | Registration | Security Type | Issue Date |
|---|---|---|---|
| IAAB1 | F.B.H. | Series I | 10/1/2020 |
| IAAB0 | F.B.H. | Series I | 10/1/2020 |
| IAABZ | F.B.H. | Series I | 10/1/2020 |
| IAAAA | F.B.H. | Series I | 10/1/2020 |
| IAAB3 | F.B.H. | Series I | 11/1/2020 |
| IAAB2 | F.B.H. | Series I | 11/1/2020 |
| IAAAB | F.B.H. | Series I | 11/1/2020 |
| IAAAC | F.B.H. | Series I | 12/1/2020 |
| IAAB4 | F.B.H. | Series I | 1/1/2021 |
| IAAAD | F.B.H. | Series I | 1/1/2021 |
| IAAAE | F.B.H. | Series I | 2/1/2021 |
| IAAAF | F.B.H. | Series I | 3/1/2021 |
| IAAAG | F.B.H. | Series I | 4/1/2021 |
| IAAAH | F.B.H. | Series I | 5/1/2021 |
| IAAAI | F.B.H. | Series I | 6/1/2021 |
| IAAAJ | F.B.H. | Series I | 7/1/2021 |
| IAAAK | F.B.H. | Series I | 8/1/2021 |
| IAAAL | F.B.H. | Series I | 9/1/2021 |
| IAAAM | F.B.H. | Series I | 10/1/2021 |
| IAAAN | F.B.H. | Series I | 11/1/2021 |
| IAAAO | F.B.H. | Series I | 12/1/2021 |
| IAAAP | F.B.H. | Series I | 1/1/2022 |
| IAAAQ | F.B.H. | Series I | 2/1/2022 |
| IAAAR | F.B.H. | Series I | 3/1/2022 |
| IAAAS | F.B.H. | Series I | 4/1/2022 |
| IAAAT | F.B.H. | Series I | 5/1/2022 |

h) Any and all assets held in Treasury Direct minor-linked account

number ending in 2370 in the name of P.S.H., which is linked to Treasury Direct account number ending in 7515 in the name of Christopher Hammond, including but not limited to the following:

| Confirmation Number | Registration | Security Type | Issue Date |
|---|---|---|---|
| IAAB1 | P.S.H. | Series I | 10/1/2020 |
| IAAB0 | P.S.H. | Series I | 10/1/2020 |
| IAABZ | P.S.H. | Series I | 10/1/2020 |
| IAAAA | P.S.H. | Series I | 10/1/2020 |
| IAAB3 | P.S.H. | Series I | 11/1/2020 |
| IAAB2 | P.S.H. | Series I | 11/1/2020 |
| IAAAB | P.S.H. | Series I | 11/1/2020 |
| IAAAC | P.S.H. | Series I | 12/1/2020 |
| IAAB4 | P.S.H. | Series I | 1/1/2021 |
| IAAAD | P.S.H. | Series I | 1/1/2021 |
| IAAAE | P.S.H. | Series I | 2/1/2021 |
| IAAAF | P.S.H. | Series I | 3/1/2021 |
| IAAAG | P.S.H. | Series I | 4/1/2021 |
| IAAAH | P.S.H. | Series I | 5/1/2021 |
| IAAAI | P.S.H. | Series I | 6/1/2021 |
| IAAAJ | P.S.H. | Series I | 7/1/2021 |
| IAAAK | P.S.H. | Series I | 8/1/2021 |
| IAAAL | P.S.H. | Series I | 9/1/2021 |
| IAAAM | P.S.H. | Series I | 10/1/2021 |
| IAAAN | P.S.H. | Series I | 11/1/2021 |
| IAAAO | P.S.H. | Series I | 12/1/2021 |
| IAAAP | P.S.H. | Series I | 1/1/2022 |
| IAAAQ | P.S.H. | Series I | 2/1/2022 |
| IAAAR | P.S.H. | Series I | 3/1/2022 |
| IAAAS | P.S.H. | Series I | 4/1/2022 |
| IAAAT | P.S.H. | Series I | 5/1/2022 |

i) Any and all assets held in Victory Capital 529 account number ending in XXXXX7424-01 in the name of Christopher Hammond for the benefit of F.B.H.;

j) Any and all assets held in Victory Capital 529 account number ending in XXXXX7424-02 in the name of Christopher Hammond for the benefit of P.S.H.;

13

k) 2018 Ford F-350, Super Duty King Ranch/Lariat – Crew Pickup, VIN 1FT8W3BT1JEB52626, registered to Christopher James Hammond;

l) 2021 Grand Designs Transcend Travel Trailer, registered to Irene Walsh Hammond, VIN 573TT3025M8816838.

WHEREFORE, the government respectfully requests the Court to enter the attached proposed Preliminary Order and Judgment of Forfeiture.

Respectfully submitted this 23rd day of January, 2024.

                              MICHAEL F. EASLEY, JR.
                              United States Attorney


                              BY: /s/ *Barbara D. Kocher*
                                   MATTHEW L. FESAK
                                   BARBARA D. KOCHER
Assistant United States Attorneys
150 Fayetteville Street, Suite 2100
Raleigh, NC 2760l
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
E-mail: matthew.fesak@usdoj.gov
E-mail: barb.kocher@usdoj.gov
NC State Bar #35276
NC State Bar #16360

14

CERTIFICATE OF SERVICE

I certify that I have on this 23rd day of January, 2024, served a copy of the foregoing Motion for Preliminary Order of Forfeiture upon counsel electronically via ECF:

Kris R. Poppe
The Richardson Firm, PLLC
Email: kris.poppe@therichardsonfirm.com

                        MICHAEL F. EASLEY, JR.
                        United States Attorney

                        BY: /s/ Matthew L. Fesak
                              MATTHEW L. FESAK
                        Assistant United States Attorney
                        Civil Division
                        150 Fayetteville Street, Suite 2100
                        Raleigh, NC 27601
                        Telephone: (919) 856-4530
                        Facsimile: (919) 856-4821
                        E-mail: matthew.fesak@usdoj.gov
                        NC State Bar #35276
                        Attorney for Plaintiff